IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERSON EXCAVATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:15-cv-939-MHT |
| | ) | [wo] |
| DALE COUNTY WATER AUTHORITY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 27, entered 3/10/16).  Now pending before the Court is the *Motion to Dismiss* (Doc. 5, filed 1/19/16) along with the brief in support (Doc. 6), and *Defendant CDG Engineers and Associates, Inc.'s Rule 12(b)(6) Motion to Dismiss* (Doc. 7, filed 1/19/16) along with the brief in support (Doc. 8).  The motions are briefed, fully submitted, and ripe for review.  For good cause shown, the Magistrate Judge recommends that the motions be **GRANTED in part** and **DENIED in part** as further discussed below.

I. Parties, Jurisdiction, and Venue

Plaintiff is Roberson Excavation, Inc. ("Roberson"), a Florida corporation organized under the laws of Florida with its principal place of business in Milton, Florida.  Defendants are Dale County Water Authority ("DCWA") and CDG Engineers and Associates, Inc. ("CDG"). DCWA is a municipal entity in Dale County, Alabama and a political subdivision of the State. CDG is an Alabama Corporation organized under the laws of Alabama with its principal place of business in Andalusia, Alabama.

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) in that the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II. BACKGROUND

On December 21, 2015 Roberson filed its complaint. *See* Doc. 1.[1] Roberson successfully bid for a water rehabilitation construction project in Dale County, Alabama of which DCWA initiated the project and CDG oversaw the project on behalf of DCWA as the Engineer. The project included the installation of new water lines that would tie into existing water lines as well as the installation of service taps to customers. CDG was required to perform inspections, but Roberson alleges the employee who oversaw the project was incompetent and unqualified to perform the inspections as they had never worked on a water line project prior to this contract. On February 27, 2015, DCWA suspended the project. Further, DCWA withheld retainage from its payments to Roberson. On June 12, 2015, the parties entered into a "Forbearance Agreement" wherein Roberson would continue working on the project and complete the contractual requirements. On August 11, 2015, on the advice of CDG, DCWA terminated the contract. Roberson alleges it was not paid for any additional work and claims DCWA and CDG both improperly calculated retainage amounts. In the complaint, Roberson alleges four specific counts. Count I (Breach of Contract) alleges a claim against DCWA and Count II (Tortious Interference with a Contractual Relationship) alleges a claim against CDG. Count III (Wrongful Termination of a Contract) and Count IV (Wrongful Misappropriation of

---

[1] The Court necessarily for the purposes of the motions to dismiss views as true the facts as alleged by the Plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012) (citation omitted).

Retainage Funds) are alleged against both Defendants. Roberson seeks $192,509.69 in damages plus interest, costs, and attorney's fees. *See* Doc. 1 generally.

Defendants timely filed their respective motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docs. 5, 7. DCWA asserts the Completion Agreement from June 12, 2015 bars recovery under claims related to the original contract. As such, DCWA requests dismissal of the complaint or in the alternative, dismissal of claims arising prior to June 12, 2015. DCWA attaches the June 12, 2015 Completion Agreement to the motion to dismiss.[2] *See* Doc. 5, Exhibit A (hereinafter "Completion Agreement"). Roberson timely responded to the motion to dismiss and argues that the release contained in the Completion Agreement does not apply to tort claims under Counts II, III, and IV. *See* Doc. 19. Further, Roberson argues it would not bar contract or tort claims arising after June 12, 2015. DCWA in its reply asserts Roberson did not reserve any tort claims prior to the execution of the Completion Agreement and therefore those claims are barred. *See* Doc. 24. DCWA also states Counts II, III, and IV are not truly tort claims, but rather claims of breach of contract.

CDG also filed its motion to dismiss asserting many of the same arguments as DCWA. *Compare* Docs. 7-8 *with* Docs. 5-6. Specifically, CDG also asserts the Completion Agreement released DCWA and its "agents" and "representatives" from all claims, known or unknown, arising or occurring prior to the date of the agreement (June 12, 2015). CDG asserts it qualifies

---

[2] Generally, a court may not consider matters outside the complaint without converting a motion to dismiss to a motion for summary judgment. However, the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged. *SFM Holdings, Ltd. V. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) and *Maxcess Inc. v. Lucent Techs, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005)). In the instant lawsuit, Plaintiff references a June 12, 2015 Forbearance Agreement which Defendants assert is a mistitle and references the Completion Agreement. Plaintiff in its response does not challenge the authenticity of the Completion Agreement and even also refers to it as the Completion Agreement. Therefore, the Court finds the Completion Agreement dated June 12, 2015 is central to the plaintiff's claim and is undisputed.

as an agent and representative of DCWA.  It also requests that the complaint be dismissed in its entirety or in the alternative for claims related to acts or omissions that arose prior to June 12, 2015.  Roberson filed its corrected response to the motion to dismiss.  *See* Doc. 23.  Roberson responds similarly to its separate response to DCWA.  *Compare* Doc. 19 *with* Doc. 23.  However, Roberson adds that even if the claims against DCWA are barred by the Completion Agreement, the claims in Counts II, III, and IV are not barred against CDG.  Specifically, Roberson argues the contract language is specific in its application to DCWA alone and the CDG is not included in any release.  CDG files its reply and argues the language of the contract and the completion agreement both make it clear that CDG was a representative and agent of DCWA and also that all tort claims necessarily arise from the contract which are barred by the release contained in the Completion Agreement.

### III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *Gilmore*, 125 F. Supp.2d at 471.  To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true."  *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)).  In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*,

146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[3]

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966. Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.* at 570, 127 S. Ct. at 1974. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561, 127 S. Ct. at 1968 (internal quotation and alteration omitted).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

## IV. DISCUSSION AND ANALYSIS

The motions are fully submitted and ripe for this Court's review. The Court will address each count in turn. However, from the outset, it is clear to the Court that upon review of the motions, contract, and completion agreement that there are two distinct time periods at issue – (1) before and including June 12, 2015 and (2) after June 12, 2015.

### A.   Count I – Breach of Contract Against DCWA

In its complaint, it is clear the breach of contract claim in Count I is asserted solely against DCWA. Roberson further indicates this in its response to CDG's motion to dismiss wherein it does not reference Count I, but only Counts II, III, and IV. *See* Doc. 23 at p. 1-2. First, the Court turns to the allegations identified in the Complaint (Doc. 1). A contract between Roberson and DCWA was signed on or about June 25, 2014.[4] On February 27, 2015, DCWA suspended the project and withheld the retainage from its payments to Roberson. On August 11, 2015, DCWA terminated the contract. By that point, Roberson completed its contractual obligations and awaited DCWA's response to its request for a "punch list" of remaining items. DCWA refused to provide a list and has not paid Roberson for the remaining work it performed and completed. *See* Doc. 1, ¶¶ 11-14.

Next the Court looks to the Completion Agreement for additional undisputed facts as they relate to the above allegations. The Completion Agreement was signed on June 12, 2015. *See* Doc. 5, Ex A. The Completion Agreement memorializes negotiations since the suspension

---

[4]   Plaintiff's complaint states June 25, 2014. *See* Doc. 1, § 11. The attachment to the Complaint, Exhibit A merely indicates June 2014 and DCWA's Motion to Dismiss also references June 2014, but not a specific date in June 2014. For the purposes of these motions, the precise date in June is unimportant and the court finds that "on or about" June 25, 2014 is adequate to summarize the Contract at issue.

of the project on February 27, 2015.[5]  The parties and signatories to the Completion Agreement are DCWA, Roberson, and Merchants National Bonding, Inc.[6]

> 2. Agreed Contract Amount.  The Parties agree that the total Contract sum is $779,976.35, that [Roberson] has been paid, to date, $576,878.01, and that DCWA has withheld as retainage the sum of $114,729.17 (Retainage), although [Roberson] disputes that it has received all payments due under the Contract, and further disputes whether DCWA has properly interpreted and applied the retainage provisions of the Contract.  The Parties agree that [Roberson] shall not receive any additional payments under the Contract until [Roberson] has completed the Work, DCWA has accepted the Work (Project Completion), and [Roberson] has submitted its final pay application (Final Pay Application); that the Final Pay Application shall not be submitted until Project Completion; and that, upon submission of the Final Pay Application, the Retainage is due to be included in the calculation of any final payment due to [Roberson] under the Final Pay Application under the Contract, as amended hereby.

*Id*. at p. 2, ¶ 2.

> 7. **Waiver/Release and Reservation of Certain Claims**.  The Parties agree as follows:
>
> (a) Except as specifically provided or stated in this Agreement, any claim by DCWA against [Roberson] under the Contract for delay damages, legal expenses, and additional engineering expense arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged, as it is the intent of the Parties that the sole remedy of the DCWA with respect to delay, legal, and engineering expense arising or occurring prior to the date of this Agreement is as set forth in this Agreement, and that [Roberson] shall not challenge or contest hereafter its responsibility for said expenses as provided in this Agreement; and that, except as provided above, DCWA expressly reserves, retains, and preserves any and all of its claims, demands, actions, causes of action, rights and remedies against [Roberson], or Merchants, arising under the Contract, as amended, and under the Bonds, ad applicable law, for all Work performed, including but not limited to labor and materials, at any time under the Contract, as amended, and including but not limited to any warranty claim as extended by this Agreement.
>
> (b) Except as specifically provided or stated in this Agreement (including but not limited to any right to the payment Retainage as set forth herein), any claim by [Roberson] against DCWA (and its officers, employees,

---

[5]  The Completion Agreement references REI (Roberson Excavation, Inc.).  REI and Roberson are the same entity.

[6]  Marchants National Bonding, Inc. is not a party to this litigation.

> agents, and representatives) under the Contract arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged; provided, however, that [Roberson] expressly reserves, retains, and preserves any and all of its claims, demands, actions, causes of action, rights and remedies against the Project Engineer for any and all acts or omissions of the Project Engineer acting in its independent professional capacity and not as DCWA's agent or representative.

*Id*. at p. 3, ¶ 7.

DCWA asserts the above language expressly bars Roberson's breach of contract claim. *See* Doc. 6, p. 3-6. Doc. 24 at p. 2, ¶4 – p. 3, ¶5. Roberson states in its response to the motion to dismiss that its breach of contract claims are founded upon DCWA's breach of the original contract terms *and* the Completion Agreement subsequently agreed to by the parties. *See* Doc. 19 at p. 6. It further asserts the retainage claims were expressly reserved. *Id*. at p. 7. As this is a diversity case, the Court must turn to Alabama law in reviewing the contract.

"Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract." *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (citing *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993)). Unless there is indication the terms are used in a special or technical sense, they will be given their "ordinary, plain, and natural meaning." *Id*. (citation omitted). If the terms are unambiguous, then the court will enforce the contract as written. *Id*. If the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction. *Id*. "Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of *contra proferentem*, any ambiguity must be construed against the drafter of the contract." *Id*. Thus, the Court looks to the Completion Agreement to determine whether the terms regarding release are unambiguous – as the Completion Agreement acts as a modification to the terms of the original contract.

i.      **Breach of Contract – On and Before June 12, 2015 (except retainage)**

Roberson argues the breach of contract claim relies in part on the breach of the original contract. Thus, the Court looks to the release provision discussed in the Completion Agreement. "If the express provisions of a release are unambiguous, then, in accordance with contract principles generally, they will be taken as expressing the intent of the parties." *Nix v. Henry C. Beck Co.*, 572 So.2d 1214, 1217 (Ala.1990); *see also* Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing ... must have effect according to their terms and the intentions of the parties thereto."). "A document is unambiguous if only one reasonable meaning emerges." *Voyager Life Ins. Co. v. Whitson*, 703 So.2d 944, 948 (Ala. 1997) (quoting *Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.*, 622 So. 2d 314, 317 (Ala. 1993)).

The Court finds it is absolutely clear from the terms of the Completion Agreement that any pre-June 12, 2015 breach of contract claims, whether or not known at the time were expressly waived by Roberson. Specifically, in paragraph 7(b) Roberson released "any claim by [Roberson] against DCWA (and its officers, employees, agents, and representatives) under the Contract ***arising or occurring prior to the date of this Agreement, known or unknown***." *Id*. at p. 3, ¶ 7. As the terms are unambiguous, the Court must enforce the contract as written. As such, any breach of contract claims that arise on or before June 12, 2015 are precluded and the claims raised in paragraph 12 of the Complaint merit dismissal.

ii.     **Breach of Contract – After June 12, 2015**

Roberson also asserts breach of contract for claims arising after the signing of the Completion Agreement. Specifically, Roberson alleges DCWA terminated the contract on August 11, 2015 despite completing its obligations to DCWA and requesting a "punch list." Roberson claims DCWA refused to provide such a list and instead terminated the contract and

did not provide compensation for the work completed.

Just as the Court found the pre-June 12, 2015 claims to be clearly precluded, the Court finds equally clear the fact these breach of contract claims are not precluded by the Completion Agreement.  Therefore, the claims detailed in paragraph 14 of the Complaint are not barred and thus the motion to dismiss these claims should be denied.

### iii. Breach of Contract -- Retainage

The breach of contract claims as they relate to retainage must be separated from the other pre-June 12, 2015 breach of contract claims because the Completion Agreement does specifically reference an exception to the Retainage.  *See* Doc. 5, Ex. A, ¶¶ 2, 7(b).  Paragraph 7(b) starts with: "[e]xcept as specifically provided or stated in this Agreement (including but not limited to any right to the payment Retainage as set forth herein), any claim by [Roberson] against DCWA (and its officers, employees, agents, and representatives) under the Contract arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged."  Thus, the Court must look to whether the claims pertaining to the Retainage are referenced in any other portion of the Completion Agreement.  The Court finds such a reference in paragraph 2 where it states:

> The Parties agree that [Roberson] shall not receive any additional payments under the Contract until [Roberson] has completed the Work, DCWA has accepted the Work (Project Completion), and [Roberson] has submitted its final pay application (Final Pay Application); that the Final Pay Application shall not be submitted until Project Completion; and that, upon submission of the Final Pay Application, ***the Retainage is due to be included in the calculation of any final payment due to [Roberson] under the Final Pay Application under the Contract, as amended hereby***.

Next the Court must determine if the language is unambiguous in whether a retaining claim has been preserved.  In the agreed contract amount stated in the Completion Agreement, DCWA acknowledges that it has withheld as retainage the sum of $114,729.17.  *See* Doc. 5, Ex. A, ¶ 2.

The section further acknowledges that payment will be included in the final payment due under the Final Pay Application. *Id*. Paragraph 7(b) clearly reiterates Roberson maintains any claim regarding the "right to the payment of Retainage as set forth herein." Therefore, the Court finds the Retainage claim for payment was clearly and unambiguously reserved by Roberson. To the extent the breach of contract claim asserts a failure to pay the retainage, the claim would survive the preclusion claim outlined in the Completion Agreement and the motion to dismiss should be denied. Even to the extent one could argue the term is ambiguous, that finding in and of itself establishes that dismissal under Fed. R. Civ. P. 12(b)(6) is inappropriate. Therefore, this claim should proceed beyond the dismissal stage for further discovery.

**B.    Count II – Tortious Interference Against CDG**

The Complaint, on its face, asserts Count II solely against CDG. Further, Plaintiff's corrected response to CDG's motion to dismiss also seemingly asserts that Count II is solely against CDG. However, in Plaintiff's response to DCWA's motion to dismiss, there is a brief reference on Count II on page 1. *See* Doc. 19. Further, in the same response regarding DCWA's motion to dismiss, Roberson makes an argument that the Completion Agreement does not apply to tort claims under Count II. *Id*. at p. 3-4. To the extent Roberson seeks to newly assert Count II against DCWA in the response to the motion to dismiss, the Court notes this is not a proper mechanism to amend the complaint. Lastly, even if Roberson were to assert Count II against DCWA, the claim would fail because under Alabama law, "a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Parsons v. Aaron*, 849 So.2d 932, 946 (Ala. 2002) (quoting *Lolley v. Howell*, 504 So.2d 253, 255 (Ala. 1987)).

CDG asserts the tortious interference claim is precluded by the release in the Completion Agreement. Roberson counters that the Completion Agreement only covered DCWA and also

does not apply to tort claims (only contract claims). Roberson states "[t]he attempt by CDG to hide behind some agency relationship for the purposes of a Motion to Dismiss with DCWA is misplaced since the express language contained in the Completion Agreement preserved all claims against CDG." *See* Doc. 23 at p. 4. As with Count I, the Court finds it appropriate to split the Count into claims prior to and after the Completion Agreement.

### i. On or Before June 12, 2015

Roberson argues the Completion Agreement release only applies to contract claims against DCWA and does not apply to CDG and tort claims. As those are two separate issues, the Court will address each in turn.

First, the Court will look to the broader issue – i.e. whether the Completion Agreement release applies solely to contract claims or also bars tort claims. The Completion Agreement states:

> (b)    Except as specifically provided or stated in this Agreement (including but not limited to any right to the payment Retainage as set forth herein), ***any claim by [Roberson] against DCWA (and its officers, employees, agents, and representatives) under the Contract*** arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged; provided, however, that [Roberson] expressly reserves, retains, and ***preserves any and all of its claims, demands, actions, causes of action, rights and remedies against the Project Engineer for any and all acts or omissions of the Project Engineer acting in its independent professional capacity and not as DCWA's agent or representative***.

*See* Doc. 5, Ex. A, ¶ 7(b) (emphasis added). Roberson places emphasis on the language "under the Contract" and "preserves any and all of its claims, demands, actions, causes of action, rights and remedies against the Project Engineer." Roberson argues this language preserves its tort claims against CDG.

However, as previously noted, the release clause is not viewed in a vacuum, but rather in the context of the entire contract. *See Homes of Legend*, 776 So.2d at 746 ("the intent of the

contracting parties is discerned from the whole of the contract"). Therefore, the Court looks to the remainder of the Completion Agreement and the Contract. Paragraph 7(a) of the Completion Agreement states:

> (a) Except as specifically provided or stated in this Agreement, any claim by DCWA against [Roberson] under the Contract for delay damages, legal expenses, and additional engineering expense arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged, *as it is the intent of the Parties that the sole remedy of the DCWA with respect to delay, legal, and engineering expense arising or occurring prior to the date of this Agreement is as set forth in this Agreement, and that [Roberson] shall not challenge or contest hereafter its responsibility for said expenses as provided in this Agreement*; and that, except as provided above, DCWA expressly reserves, retains, and preserves any and all of its claims, demands, actions, causes of action, rights and remedies against [Roberson], or Merchants, arising under the Contract, as amended, and under the Bonds, ad applicable law, for all Work performed, including but not limited to labor and materials, at any time under the Contract, as amended, and including but not limited to any warranty claim as extended by this Agreement.

*See* Doc. 5, Ex. A, ¶ 7(a) (emphasis added).

This situation is analogous to the ones presented in *Nix v. Henry C. Beck Co.*, 572 So. 2d at 1216, and *Regional Health Servs., Inc. v. Hale Cty Hospital Bd.*, 565 So. 2d 109, 114 (Ala. 1990). "With a general release, the parties obviously intended to release all claims -- contract claims as well as tort claims . . . If the parties had wanted to limit the release, they could have expressly reserved and excepted certain claims, including tort claims." *Nix*, 572 So. 2d at 1216 (quoting *Regional Health Servs.*, 565 So. 2d at 114). The Court finds that tort claims against DCWA arising before June 12, 2015 are clearly included as part of the release in paragraph 7.

As the tort claims against DCWA are precluded, next, the Court looks to whether the release provision articulated in paragraph 7 of the Completion Agreement applies to CDG through an agency theory. As previously noted, paragraph 7(b) states:

> (b)     Except as specifically provided or stated in this Agreement (including but not limited to any right to the payment Retainage as set forth herein), ***any claim by [Roberson] against DCWA (and its officers, employees, agents, and representatives)*** under the Contract arising or occurring prior to the date of this Agreement, known or unknown, is hereby waived, released, and discharged; provided, however, that ***[Roberson] expressly reserves, retains, and preserves any and all of its claims, demands, actions, causes of action, rights and remedies against the Project Engineer for any and all acts or omissions of the Project Engineer acting in its independent professional capacity and not as DCWA's agent or representative.***

*See* Doc. 5, Ex. A, ¶ 7(b) (emphasis added).  Therefore, the issue turns on whether CDG was acting as DCWA's agent or representative.

The original Contract states "A.  ***ENGINEER will be OWNER's representative during the construction period***.  The duties and responsibilities and the limitations of authority of ENGINEER as OWNER's representative during construction are set forth in the Contract Documents and will not be changed without written consent of OWNER and ENGINEER."  *See* Doc. 1, Ex. A, Pt. 1 at p. 68, Art. 9, § 9.01 (emphasis added).  More importantly, in reviewing the Complaint, Roberson unequivocally states "[t]he Defendant, CDG, ***at all times pertinent during the completion of the construction contract between ROBERSON and DCWA acted as a servant or agent DCWA***."  *See* Doc. 1 at ¶ 17.  The general rule that is that a party is bound by the admissions in his pleadings.  *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (citations omitted).  Such judicial admissions are "proof possessing the highest probative value.  Indeed, facts judicially admitted are facts established not only beyond the need to prove them, but beyond the power of evidence to controvert them."  *Id*. (quoting *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941); *see also San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 492 (1st Cir. 2012) (quoting 5 Wright & Miller, <u>Federal Practice and Procedure</u> § 1226, at 302-304 (3d ed. 2004) ("The pleader must be careful not to allege facts that constitute a defense to his claim for relief…A complaint containing a built-in

defense usually is vulnerable under Rule 12(b)(6) to a motion to dismiss for failure to state a claim upon which relief can be granted."); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("A plaintiff can…plead himself out of a claim by including unnecessary details contrary to his claims."); *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[P]laintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts" and "judicial efficiency demands that a party not be allowed to controversy what it has already unequivocally told a court by the most formal and considered means possible.").

In the Complaint, Roberson unequivocally alleged CDG acted in the capacity of servant or agent of DCWA and the original Contract also indicates CDG purpose for the contract was to act as DCWA's representative.  The tort claims against DCWA arising on or before June 12, 2015 are precluded by the contractual release in the Completion Agreement.  Coupling those two findings, the tort claims against CDG merit dismissal because it was an agent/representative of DCWA.

  **ii.**  **After June 12, 2015**

As with Count I, the Court next determines whether claims arising after June 12, 2015 are precluded.  In Count II, Roberson is fairly general in its allegations against CDG.  Through its response to the motion to dismiss, Roberson emphasizes the language "at all times pertinent during the completion of the construction contract."  *See* Doc. 23 at p. 5 (citing Doc. 1 at ¶ 17).  Roberson also reiterates the allegations include occurrences that "took place both before *and after* execution of the Completion Agreement."  *Id*. at p. 4.

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570,

127 S. Ct. at 1974.  Given the "exceedingly low" requirements to survive a Rule 12(b)(6) motion to dismiss, the court finds that any tort claims for wrongful interference in the contract that arise *after* the execution of the Completion Agreement are not precluded by the Completion Agreement.  Therefore, dismissal at this nascent phase is inappropriate.

C.    **Count III – Wrongful Termination of a Contract Against DCWA and CDG**

Roberson alleges Count III for wrongful termination of a contract against both DCWA and CDG.  In paragraph 20 of its Complaint, Plaintiff incorporates all prior allegations in paragraphs 1 through 19.  However, in its responses to the motions to dismiss, Plaintiff also makes it clear that these actions took place after June 12, 2015.[7]  Therefore, the Completion Agreement itself would not preclude wrongful termination claims as they arose when DCWA terminated the contract upon the advice and recommendation of CDG on August 11, 2015.

However, despite the Completion Agreement not precluding a wrongful termination claim, the claim still merits dismissal as Alabama does not recognize this as a tort.  The "mere failure to perform a contractual obligation is not a tort." *Barber Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996).  The Alabama Supreme Court has recognized that "the line of distinction between actions in tort and [actions in] contract is thin and often nebulous in many instances." *Ex Parte Certain Underwriters at Lloyd's of London*, 815 So. 2d 558, 563 (Ala. 2001).  But, Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract.  *Blake v. Bank of Am., N.A.*, 845 F.Supp.2d 1206, 1210 (M.D. Ala. 2012).  Indeed, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent*

---

[7]    Even if by incorporating the prior paragraphs Plaintiff attempted to assert claims (whether in contract or tort) for actions taken by DCWA prior to June 12, 2015, those claims would be precluded by the Completion Agreement release.  Further, though Plaintiff did reserve claims against CDG in its individual capacity, no such claims appear in the Complaint due to Plaintiff's limiting language of "CDG, at all times pertinent to the completion of the contract between Roberson and DCWA acted as a servant or agent of DCWA." *See* Doc. 1 at ¶ 17.

*Transit Co.*, 85 So. 2d 436, 440, 264 Ala. 114 (Ala. 1956); *see also Am. Dist. Tel. Co. of Ala. v. Roberts & Son*, 219 Ala. 595, 122 So. 837, 840 (Ala. 1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation). Further, the Alabama Supreme Court does not recognize economic duress as an independent tort. *See Cahaba Seafood, Inc. v. Central Bank of South*, 567 So. 2d 1304, 1306 (Ala. 1990); *Guillot v. Beltone Electronics Corp.*, 540 So. 2d 648 (Ala. 1988).

In the case at hand, Plaintiff's allegations stem from Defendants' refusal to pay what it is owed for work performed under the Contract as modified by the Completion Agreement and the termination of the contract itself. This is not an independent tort which arises from some sort of negligence in the action or inaction of the Defendants. Further, the Alabama Supreme Court has held that the "substance of the plaintiff's allegations control, not the effort given by the plaintiff to style the claims throughout litigation." *Elizabeth Homes, L.L.C. v. Cato*, 968 So. 2d 1 (Ala. 2007) (citing *Bailey v. Faulkner*, 940 So. 2d 247, 253 (Ala. 2006)). Here, all Roberson's claims revolve around rights, obligations, and duties specified in the Contract and Completion Agreement. *See, e.g. Porterfield v. Flowers Baking Co. of Opelika, LLC*, Civ. Act. No. 2:05-cv-937, 2007 U.S. Dist. LEXIS 92257, (M.D. Ala. Dec. 12, 2007) (finding that a wrongful termination of a contract is necessarily a contract claim and not a tort).

Based on the above, the wrongful termination *tort* claims merit dismissal. Further, in reviewing the substance of the claim, it is already encompassed in Count I's breach of contract claim against DCWA.

**D.   Count IV – Wrongful Misappropriation of Retainage Funds Against DCWA and CDG**

For the same reason that Count III for wrongful termination merits dismissal, the claim for wrongful misappropriation of retainage funds also merits dismissal. Though the Completion

Agreement does reserve claims involving the retainage funds, it does not create an independent tort. Rather, all obligations and failure to comply with those obligations fall squarely in the terms of the contract. As such, there is no separate tort claim, but rather an argument for breach of contract. The Court previously addressed that the retainage funds claims may proceed under Count I as the breach of contract claims.

## V. SUMMARY AND REMAINING CLAIMS

The Court notes that with regard to Count III and Count IV, the claims were asserted against both defendants and with the dismissal, it leaves the claims solely pending against DCWA. However, it is not for the Court to overcome pleading defects in that the tort claims against CDG for wrongful termination and wrongful misappropriation would not proceed.

Plaintiff has not filed a motion for leave to amend the Complaint, and the Court is not required to grant Plaintiff leave *sua sponte*. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). In the case at hand, Plaintiff focused exclusively on opposing the argument that contract claims are barred by the Completion Agreement and attempted to cloak the claims in terms of tort to avoid dismissal based on preclusion by the Completion Agreement. As such, the Court finds no need to *sua sponte* authorize an amended complaint to overcome those deficiencies. Rather, based on the analysis detailed in this opinion, the claims that would proceed beyond the motion to dismiss would be the following:

> (1) Count I: Breach of Contract against DCWA for post- June 12, 2015 actions and actions regarding the retainage funds.

(2) Count II: Tortious Interference with a Contractual Relationship Against CDG for post- June 12, 2015 actions.

## VI. CONCLUSION

Based on the analysis above, it is the **RECOMMENDATION** of the Magistrate Judge that the Motions to Dismiss (Docs. 5, 7) be **GRANTED in part** and **DENIED in part**. The motions should be granted as to the following claims: (1) Count I Breach of Contract – on and before June 12, 2015 (except retainage) against DCWA, (2) Count II Tortious Interference with a Contractual Relationship – on and before June 12, 2015 against CDG, (3) Count III Wrongful Termination of a Contract against both DCWA and CDG, and (4) Count IV Wrongful Misappropriation of Retainage Funds against both DCWA and CDG. The motions should be denied as to the remaining claims: (1) Count I: Breach of Contract against DCWA for post- June 12, 2015 actions and actions regarding the retainage funds and (2) Count II: Tortious Interference with a Contractual Relationship Against CDG for post- June 12, 2015 actions.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 23, 2016**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or

manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

      DONE this 9th day of September, 2016.

                                      /s/ Terry F. Moorer
                                      TERRY F. MOORER
                                      UNITED STATES MAGISTRATE JUDGE